May it please the court, excuse me, I'm finding a bug. I'm Karen Landau and I represent Mr. Castro. The question before this court is whether, in a case where a factual finding will substantially increase the advisory guideline range, the district court should use the standard of proof of beyond a reasonable doubt. This issue, of course, this court is open in this circuit, although as the government has pointed out, is not open in this circuit. And I think it's important for the district court to be able to use the standard of proof of beyond a reasonable doubt. As I pointed out, other circuits have rejected this argument, some under the Fifth Amendment and some under the Sixth Amendment. Which claim are you raising? We raised the Fifth Amendment claim in the brief. Primarily, well, yes, we relied primarily on the Fifth Amendment. I think the argument can be made under the Sixth as well. Now, in this case, just to review the record briefly, Mr. Castro, this is Mr. Castro's third trip to this court. He faced a statutory maximum sentence of 35 years, 30 years for the drug offense and five years consecutive for the 924C. The district court determined, apparently using a preponderance of the evidence standard, that the base offense level was 38 for the drugs, that it was appropriate to apply a three-level upward adjustment for a role, which made his guideline range 360 months to life. And then the court imposed an aggregate sentence of 30 years. Even though the judge imposed what would appear to be a below-guideline sentence or a sentence at the low end of the guidelines, it's important to consider the burden of proof, because since the advisory guidelines are so important to determination of the ultimate sentence. So they're not really that important anymore, are they? Now that it's required under Booker's that the court consider them, along with a number of other factors, and as long as it's within or below the statutory maximum and reasonable, isn't that the end of the inquiry? Well, Your Honor, I think there's two answers to that question. First, even if it's only a factor, it's still an important factor that has to be considered. And, in fact, most courts — Even though it's not binding in any way? Even though — well, it's questionable how binding it is. Some circuits, the circuit has not, but some circuits have adopted a presumption that a sentence within the advisory guideline range is presumptively reasonable. And, in fact — Has the circuit ruled on that yet? No, the circuit has not ruled on that. And I don't know if it's pending. I believe it — I'm not sure if it's pending. It's probably — I'm sure it is, but I'm not sure which case. I think — wasn't it Cantrell, where that was — The Plouffe case. There was a case before that. It was footnote number one, the last sentence. And then it was — It was withdrawn. That's correct, Your Honor. And I can't remember the name of the case. It was withdrawn. Yes. It was raised in another case. Yes. The Plouffe case actually involves the question of whether this Court has the jurisdiction to review a within-guideline sentence. That — or they just asked for supplemental briefing. So that is also before the Court. But — but — now, if I can — anyway, the — it's still an important — it's, you know — I mean, again, this Court has not adopted the position that it — that a guideline sentence is presumptively reasonable. But if it does, that is demonstrative how important the guidelines still are. Even if that is not adopted by this Court, which I hope it is not adopted by this Court, the guidelines are still the starting point. And, you know, the guidelines are one factor to be considered. But they are usually — just because of long-term practice — I mean, the guidelines have been with us for almost 20 years now. Most district judges are used to the guidelines. There are very few district judges still sitting who were — who sat before the era of the guidelines. And most of those judges are on senior status. So most judges start by looking at the guidelines. And if they're going to vary the sentence, they vary by reference to the guidelines. Given the importance of the guidelines to — especially in determinations like this one, where we have — we have a — we found no quantity, not even the statutory minimum quantities, because this case was actually tried before Apprendi was decided. This is a very old case. Given — given that, the jury made no quantity findings. And Mr. — so we don't even have what we have post-Apprendi. We don't even have a finding of 5 kilograms or the 5-kilogram cutoff. And so it's important in these cases especially, but in any case, I would argue, that the judge use a standard of proof that gives adequate confidence to the sentence to be imposed. For example, in this case, even — even if we leave quantity aside, because in this case, the second — the first resentencing, the second sentencing, the judge used a clear and convincing standard on drug quantity. Even if we only look for the rule adjustment, the difference between a guideline range of 31 — 38 and 41, which would be — that's the difference with the three-level rule adjustment, is 324 to 405 versus 360 to life. The — I mean, admittedly, the guideline ranges are only advisory, but if the low end of the guideline range is the starting point for a variance, or the mid-range, or wherever the district court chooses, it's still the starting point, and I think it would be not unreasonable to conclude that if the judge found, for example, that the rule on the offense adjustment could not be proved beyond a reasonable doubt, he might have imposed a lower sentence on Mr. Castro. Counsel, how do you get around McMillan? Well, two ways. I mean, first of all, McMillan itself applies on its terms to mandatory minimums, and we're not dealing with that. Second, probably more important, McMillan itself talked about the problem of an enhancement where the tail begins to wag the dog, and that, of course, is what we're talking about, at least with reference to drug quantity, because we're talking about a low end of the guideline range for no or very small drug quantity at 12 versus 38 at the upper end. Finally, of course, McMillan has been substantially undermined. It is still good law, and I can't argue that it's not, but as Judge Beha noted in his dissent in Dare, Harris and McMillan have been substantially undermined by Blakely and Booker, and even in the context of an advisory guideline range, we're still talking about, I mean, what we're talking about is now, I suppose, advisory maxima. So what does that mean? I mean, I don't think any of us really know. You know, it may be that this Court will find it's still bound by McMillan and Harris, and the case will have to go. Well, absolutely, but I do think that it can be, it has been undermined by Blakely and Booker, and on its face, this case is distinguishable from Dare because it does not involve mandatory minimums, and both of those cases, both McMillan and Harris, involve mandatory minimum sentences. Do you want to reserve some time? I would. If there are no more questions, I'd be happy to reserve. Were you on the trial counsel? No, I was not. He's had, I'm his, I believe, third attorney. Okay, well, doesn't the record show that the trial counsel at the time of the sentencing hearing agreed to the drug quantity calculations that were in the PSR? And then later on, I think he objected, saying drug quantities and leadership roles have to be proven beyond a reasonable doubt. Yes. I can't speak to the first sentencing. The other two sentencings are in the excerpts, but in the last sentencing, which I think is the one you're referring to, his former attorney said, well, we don't object to the factual statements in the PSI, but we object to the effect that they have on the guidelines. I would say, I mean, there's two responses. First of all, there's no question that drug quantity was not proved to the jury. It was not an issue the jury was instructed that no quantity had to be, no particular quantity had to be proven. Second, to the extent that there was a stipulation to quantity at trial, and I believe there may have been, that stipulation, because it was pre-apprendi, there was no, there was no burn of proof at all. You know, it was, I mean, it was common for trial attorneys to stipulate to a quantity just to move the trial along because quantity was not considered to be an element of the offense. Of course, after apprendi in Buckland, the practice changed substantially. So I would argue to the extent that that stipulation is in the record, that is not binding at sentencing now. It would not be controlling because it would have been made under a substantially, any stipulation as to the statutory quantity would have been made under a substantially lower burn of proof. Thank you. Good morning, Your Honors. May it please the Court. Steve Kim for the United States. The legal question presented by this appeal, that is whether after Booker, proof beyond a reasonable doubt is required to enhance a sentence under the advisory guidelines, the government would respectfully submit that Booker itself holds that it is not. Booker rejected the remedy that would have engrafted a reasonable doubt and jury trial requirement onto the sentencing guidelines. Instead of that, it opted for a choice that probably took a lot of us by surprise, but was a choice that rendered the guidelines advisory, but still required that they be applied as they had been for the past 18 years, which was through judicial fact finding on a preponderance standard. So I think that Booker itself provides the answer to this particular question. Did Booker address the Fifth Amendment due process argument? Your Honor, I would say yes, because what Booker did was it applied Apprendi to the federal sentencing guidelines. And although we use Apprendi, when we talk about Apprendi, we use the shorthand, the Sixth Amendment jury trial requirement. When we actually look at Apprendi, Apprendi was rooted in both the Fifth Amendment due process requirements and the Sixth Amendment jury trial requirement. The reasonable doubt requirement derives from the Fifth Amendment, and Apprendi itself was grounded in both those twin considerations. In fact, Booker itself acknowledged that when it was discussing Apprendi and its progeny, that what animated those decisions was both the Fifth Amendment due process concern, which requires proof beyond a reasonable doubt for the elements of an offense, and the Sixth Amendment jury trial requirement, which requires that the criminal offense be presented to a jury. So although we use the shorthand, and the government certainly uses it as well, I don't think that Booker was silent on the Fifth Amendment question. It was simply applying Apprendi to the federal sentencing guidelines, and Apprendi clearly was based on both Fifth Amendment and Sixth Amendment concerns. So to that extent, it is addressing the Fifth Amendment issue. So there is not a constitutional problem that needs to be avoided here. To the extent, Judge Wallinson, that there is any ambiguity in Booker, this Court is not faced with the prospect of having to address this issue on a blank slate. This Court has certainly, before Booker, in Howard, and the en banc opinion in Restrepo, has already held that the preponderance standard satisfies due process. Certainly since McMillan in 1986, and certainly no later than 1997 when the Supreme Court decided Watts, it's been clear in the Supreme Court as well that the preponderance standard satisfies due process. Post-Booker, this Court has also reaffirmed the vitality of its own pre-Booker precedent. Expressly, this Court's decision in Ameline endorsed Howard, which held before Booker that not only must the allocation of the burden of proof, that not only explained how the allocation of the burden of proofs worked, but also explained that the preponderance standard is the appropriate standard. So while this Court has not yet expressly held that, Ameline, the en banc opinion in Ameline, as well as Dare, points to the same conclusion. And also, Your Honor, all circuits that have faced this issue are in agreement that the preponderance standard has been preserved by Booker. In addition to the Vaughn case that I cited in my 28th day letter, the Eighth Circuit in a recent case, Garcia-Gonon, G-O-N-O-N, has also held that there is no separate due process problem with the preponderance standard at sentencing. Didn't the district court here use a clearing convincing standard? In the August 2003 sentencing, it did. What it did exactly was it didn't say that I had to use the clearing convincing standard, but it recognized that it might have to, so it found by clearing convincing evidence drug quantity was over 150 kilograms. At the last sentencing, it never really became an issue because defense counsel did not challenge any of the factual statements in the PSR. They certainly did preserve their right to object to the legal effect of those facts under the guidelines in the post-Booker world, but the facts themselves were unchallenged, and so there was no real issue as to the burden of proof in the latest round of sentencing. So in the final analysis, Your Honor, I think that the constitutional avoidance argument that's rooted in the Fifth Amendment is really a strawman argument that misapprehends Booker because Apprendi was based on Fifth Amendment concerns, and because we are not dealing with a blank slate here, we have longstanding precedent that upholds the use of the preponderance standard under the guidelines. As long as the guidelines are applied in an advisory fashion, there should be no Apprendi-slash-due process problem any longer. Unless the panel has any further questions, I'm prepared to submit at this point. No, thank you. Thank you, Your Honor. Your Honor, I just wanted to make clear that the question of the burden of proof at sentencing was specifically brought up and preserved. The defense asked the court to use a beyond reasonable doubt standard, and the court refused to do so. This was at the last sentencing. It's also clear from the record that a higher standard of proof was never used on the rule adjustment. At the first resentencing, which was in 2003, the judge did use clear and convincing as to drug quantity, but not as to rule. Thank you.
judges: Wardlaw , Rawlinson,cebull